AFFINITY LABS OF TEXAS, LLC, Plaintiff,

v.

DIRECTV, LLC, DirecTV Digital LLC, et al., Defendants.

Case No. 6:15–CV–0030–WSS–JCM.

United States District Court, W.D. Texas, Waco Division.

Signed July 7, 2015.

Cyrus A. Morton, Daniel R. Burgess, Patrick M. Arenz, Ronald J. Schutz, Shira T. Shapiro, Robins Kaplan LLP, Minneapolis, MN, John P. Palmer, Naman Howell Smith & Lee, Waco, TX, for Plaintiff.

Brian M. Cook, Ryan K. Yagura, O'Melveny & Myers LLP, Los Angeles, CA, Darin W. Snyder, O'Melveny & Myers LLP, San Francisco, CA, Hana O. Chen, O'Melveny & Myers LLP, Newport Beach, CA, for Defendants.

David B. Weaver, Jeffrey T. Han, Vinson & Elkins LLP, Austin, TX, Hilary L. Preston, Vinson & Elkins, LLP, New York City, for Defendants NBA Media Ventures, LLC, Turner Digital Basketball Services, Inc., NHL Enterprises, L.P., NHL Enterprises, Inc. and NHL Interactive CyberEnterprises, LLC.

Lindsy Solanki, Cooley LLP, Palo Alto, CA, Christopher C. Campbell, Nathan K. Cummings, Cooley LLP, Reston, VA, for Defendants MLB Advanced Media, L.P. and MLB Advanced Media, Inc.

## ORDER

WALTER S. SMITH, JR., District Judge.

Plaintiff Affinity Labs of Texas, LLC ("Affinity") filed the instant patent infringement suit, which was referred to the United States Magistrate Judge for all

purposes. Doc. 9. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rules 1(h) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, the Magistrate Judge submitted a Report and Recommendation to this Court addressing Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6). Doc. 19. After holding oral argument on May 12, 2015, and considering the parties' briefing, the Magistrate Judge concluded that Defendants' Motion is meritorious and recommended that it be granted with respect to all of the asserted claims of U.S. Patent No. 7,970,379 ("the '379 Patent"). Having reviewed the Magistrate Judge's report de novo, Affinity's objections thereto, and Defendants' Response, the Court hereby adopts the Magistrate Judge's findings and recommendation. Consequently, Defendants' Motion to Dismiss is **GRANTED.**

## FACTUAL AND PROCEDURAL HISTORY

Affinity is an innovation consulting firm that owns a large portfolio of technology-based patents. Defendants are four companies, all in the business of broadcast media. Affinity filed suit against each Defendant separately,[1] alleging infringement of the '379 Patent. The Magistrate Judge granted the parties' Joint Motion to Consolidate under Rule 42(a). Doc. 22.

The '379 Patent, entitled "Providing Broadcast Content," claims a means for delivering regionally broadcasted radio or television content to an electronic device located outside a region of the regionally broadcasted content. '379 Patent (filed June 30, 2009). According to the specification, the patent addresses the following problem:

[A] user may want to listen to a radio station located in a remote location wherein conventional radio receivers could not receive the desired broadcast. For example, a person living in Houston, Tex. may not be able to receive a radio broadcast signal from a radio station in Seattle, Wash. utilizing a conventional radio receiver.

*Id.* at col. 15 l. 58–64. The patents claim (1) a method for streaming regional content outside of a specific geographic location ("the method claims"); and (2) a system configured to carry out the method on a wireless cellular telephone device ("the system claims"). *Id.* at 57.

At the hearing on Defendants' Motion, the parties agreed that Claim 1 is representative. Claim 1 reads as follows:

1. A broadcast system, comprising:

A network based resource maintaining information associated with a network available representation of a regional broadcasting channel that can be selected by a user of a wireless cellular telephone device; and

a non-transitory storage medium including an application configured for execution by the wireless cellular telephone device that when executed, enables the wireless cellular telephone device:

to present a graphical user interface comprising at least a partial listing of available media sources on a display associated with the wireless cellular telephone device, wherein the listing includes a selectable item that enables user selection of the regional broadcasting channel;

to transmit a request for the regional broadcasting channel from the wireless cellular telephone device; and to receive

---

**1.** *See Affinity Labs of Texas, LLC v. NBA Media Ventures, LLC,* No. 6:16–CV–031 (W.D.Tex. Apr. 6, 2015); *Affinity Labs of Texas, LLC v. NHL Enterprises, LP.,* No. 6:15–CV– 032 (W.D.Tex. Apr. 6, 2015); *Affinity Labs of Texas, LLC v. MLB Advanced Media, LP.,* 6:15–CV–033 (W.D.Tex. Apr. 6, 2015). The Court's Order refers to Defendants collectively.

a streaming media signal in the wireless cellular telephone device corresponding to the regional broadcasting channel, wherein the wireless cellular telephone device is outside of a broadcast region of the regional broadcasting channel, wherein the wireless cellular telephone device is configured to receive the application via an over the air download.

*Id.* at col. 18 l. 21–44. Defendants jointly seek to dismiss Affinity's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that the '379 Patent is invalid under 35 U.S.C. § 101 for failing to state a claim patentable subject matter.

Affinity previously asserted the '379 Patent in the Austin Division of the Western District of Texas. *See Affinity Labs of Tex., LLC v. Clear Channel Broad., Inc.,* No. 1:12–CV–205–LY, 2014 WL 1699063 (W.D.Tex. Apr. 29, 2014). In a *Markman* order, Judge Yeakel held that the purpose of the invention described in the '379 Patent at issue is "to allow a user to consume 'regionally broadcasted content' when the user is physically located outside of the range of that regionally broadcasted content." *Id.* at *6. In *Clear Channel,* Judge Yeakel was not presented with the opportunity to analyze whether the '379 Patent was invalid under § 101.

Here, after holding oral argument and conducting a thorough review of the parties' briefing, the Magistrate Judge's Report and Recommendation recommended granting Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). Doc. 53. In response to the Report and Recommendation, Affinity timely filed objections thereto. Doc. 56. Defendants filed a Response to Affinity's objections. Doc. 57.

## STANDARD OF REVIEW

If a party files specific written objections to a Magistrate Judge's Report and Recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which [an] objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b)(2) (requiring specific written objections). The objections must be "sufficiently specific to focus the district court's attention on the factual and legal issues which are truly in dispute." *United States v. 2121 E. 30th St.,* 73 F.3d 1057, 1060 (10th Cir.1996); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982) (en banc) ("It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specifically consider.").

General, vague, conclusive, or frivolous objections will not suffice. *See Battle v. U.S. Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987). In such cases, the Court will only review the Magistrate Judge's findings to determine if they are clearly erroneous or contrary to the law. *See Gallegos v. Equity Title Co. of America, Inc.,* 484 F.Supp.2d 589, 591 (W.D.Tex. 2007) (citing *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.1989)). Objections made with sufficient specificity, however, allow for the district court to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Freeman v. Cnty. of Bexar,* 142 F.3d 848, 852 (5th Cir.1998) (quoting 28 U.S.C. § 636(b)(1)).

## RELEVANT LAW

Section 101 of the Patent Act defines patentable subject matter. 35 U.S.C. § 101. More specifically, § 101 states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *Id.* The Supreme Court has interpreted § 101 to

"contain[ ] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, —— U.S. ——, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014) (quotation marks omitted). "[T]he concern that drives this exclusionary principle [i]s one of pre-emption." *Id.* These categories are not patent-eligible because "they are the basic tools of scientific and technological work" that are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, —— U.S. ——, ——, 132 S.Ct. 1289, 1293, 182 L.Ed.2d 321 (2012) (quotation marks omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it[,]" thereby thwarting the primary object of the patent laws. *Id.* Thus, the Court has "repeatedly emphasized this ... concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* at 1301. However, the Court has also recognized the need to "tread carefully in construing this exclusionary principle, lest it swallow all of patent law." *Alice*, 134 S.Ct. at 2354.

The Supreme Court has recognized that, at some level, "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S.Ct. at 1293. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. *See Diamond v. Diehr*, 450 U.S. 175, 187, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981). Applications of such concepts "to a new and useful end" remain eligible for patent protection. *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972).

In *Alice*, the Court identified a "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts[,]" which reflects the two-part test it previously articulated in *Mayo*. 134 S.Ct. at 2355. Under the *Mayo/Alice* test, a court must first determine whether the claim is "directed to one of those patent-ineligible concepts[ ]" (e.g., a law of nature, physical phenomenon, or abstract idea). *Id.* If it is, the court moves to the second step and asks "[w]hat else is there in the claims before us?" *Mayo*, 132 S.Ct. at 1297. To answer that question, the court considers the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id.* at 1297–98. This analysis serves as a search for an "Inventive concept,'" which, in other words, is an element or combination of elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 1294.

## ANALYSIS

### I. The Magistrate Judge Did Not Err in Finding that the § 101 Issue Was Ripe for Adjudication.

 Affinity argues Defendants' 12(b)(6) Motion is unripe because claim construction and factual disputes existed. Although patent eligibility under § 101 is not determined at the pleadings stage in all cases, it is not error to do so and may "have a number of salutary effects." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718 (Fed.Cir.2014) (Mayer, J., concurring). These effects include "conserve[ing] scarce judicial resources," "provid[ing] a bulwark against vexatious infringement suits," and "weeding out ... patents that stifle innovation and transgress the public domain." *Id.* at 718–19. "Issues of patent-eligible subject matter are questions of

law" and are therefore appropriate to address at the pleadings stage of litigation. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed.Cir.2011); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed.Cir.2014) (affirming the district court's decision granting a motion to dismiss an infringement claim for failure to state patent-eligible subject matter); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed.Cir. 2014) (affirming the district court's decision to grant judgment on the pleadings based on § 101).

While Affinity asserts that the Federal Circuit's "analysis is limited and opaque[,]" it does acknowledge that the court "has affirmed Rule 12 motions on § 101[.]" Doc. 56 at 3 n. 1. The Court disagrees with Affinity's characterization of the extent of the Federal Circuit's analysis on this issue; the court recently issued two opinions in which it affirmed the invalidity of patents pursuant to § 101 stemming from 12(b)(6) motions to dismiss for lack of patent-eligible subject matter. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed.Cir.2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed.Cir. 2015).

Further, the Federal Circuit has opined that "[a]lthough the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349. In *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, the Federal Circuit found that the district court did not err by declaring claims patent ineligible at the pleading stage without first construing the claims or allowing the parties to conduct fact discovery and submit opinions from experts supporting their claim construction positions. 687 F.3d 1266, 1273–74 (Fed.Cir.2012).

■ Affinity claims the Magistrate Judge erred in improperly shifting the burden to it to identify a specific claim construction issue for § 101 purposes. Furthermore, Affinity contends the Magistrate Judge failed to conduct a proper, formal claim construction analysis. But when "the parties have not sought construction of any terms in the ... patent[ ], ... this lack of dispute over the proper construction of the asserted claims confirms that it is unnecessary to engage in claim construction before addressing validity under [§ ] 101." *Open Text S.A. v. Alfresco Software Ltd*, No. 13–CV–04843–JD, 2014 WL 4684429, at *3 (N.D.Cal. Sept. 19, 2014); *cf. Loyalty Conversion v. American Airlines, Inc.*, 66 F.Supp.3d 829, 835 (E.D.Tex.2014) (proceeding with a § 101 determination at the pleading stage after circumstances showed "there [were] no disputed issues of claim construction that would affect the proper analysis of the patentability of the asserted claims, and no other issues of fact that [were] material to the § 101 question"); *see also Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14–cv–79, 2015 WL 993392, at *3 (E.D.Tex. Mar. 3, 2015) (stating "neither party has identified any disputes presently ripe for claim construction" and thus "the Court sees no reason to delay its § 101 ruling while the parties continue to expend significant resources which will not impact or aid the Court in reaching this decision"); *Morales v. Square, Inc.*, 75 F.Supp.3d 716, 722, 2014 WL 7396568, at *4 (W.D.Tex.2014) (finding that "neither separate claim construction proceedings nor further development of the factual record is required before addressing the § 101 issue"); *Morsa v. Facebook, Inc.*, 77 F.Supp.3d 1007, 1012, 2014 WL 7641155, at *4 (C.D.Cal. Dec. 23, 2014) (explaining that

"claim construction is a prerequisite to the § 101 inquiry 'only where claim construction disputes are relevant'") (quoting *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14–742–GW AJWX, 2014 WL 4407592, at *5 (C.D.Cal. Sept. 4, 2014)).

Here, the Court overrules Affinity's claim construction objections because conducting claim construction was not required. The Magistrate Judge accurately noted that Affinity failed to identify a disputed term requiring construction before deciding the present motion, and thus formal claim construction is rendered unnecessary.[2] The Court agrees with the Magistrate Judge that Affinity had ample opportunity to identify in its briefing or during oral argument a claim term in need of construction before proceeding on to a § 101 analysis. The hearing transcript reflects that the Magistrate Judge stated on the record that Affinity did not identify a single claim term in need of construction. Affinity neither objected to the Magistrate Judge's statement nor identified a disputed term. Affinity simply failed to bring to light any claim construction issue that needed attention before the court addressed the merits of Defendants' § 101 claims.

The Court also overrules Affinity's objection that Defendants' Motion is not ripe because the Magistrate Judge made unsupported factual determinations regarding what was conventional, routine, or well-known at the time of the invention. The Federal Circuit has invalidated patents under § 101 at the motion to dismiss stage because conventional, routine, or

well-known elements did not provide an inventive concept. *See, e.g., Internet Patents,* 790 F.3d at 1348–49, 2015 WL 3852975, at *5 (analyzing the patent specification to demonstrate that the claim elements were conventional, common, and well-known); *Content Extraction,* 776 F.3d at 1348 ("There is no 'inventive concept' in [plaintiff]'s use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."). Additionally, as the Magistrate Judge explained, courts frequently make findings (e.g., general historical observations) when determining legal questions. *See Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,* 59 F.Supp.3d 974, 978 n. 6 (C.D.Cal.2014); Doc. 53 at 17.

Consequently, the Magistrate Judge did not err in proceeding to a § 101 analysis prior to addressing claim construction because there was no indication of a dispute on the matter. The Magistrate Judge's factual determinations were likewise not error.

## II. The Magistrate Judge Did Not Err in Finding that the '379 Patent Claims an Abstract Idea.

■ Affinity's objections claim that the Magistrate Judge erred in his *Mayo/Alice* step one analysis because: (1) the '379 Patent's claims are tangible and concrete—not abstract; (2) the claims do not fall within any abstract idea category in which the Supreme Court and Federal Circuit have recognized; and (3) the "quick look" at the '379 Patent ignores the actual claimed inventions. Doc. 56 at 10. The

---

**2.** Defendant's Response to Affinity's Objections to the Report and Recommendation also correctly explains that Affinity "fails to identify a single term or construction that the Magistrate Judge allegedly Implicitly decided, ... fails to explain how any term was allegedly construed incorrectly[,] and ... fails to explain how any term allegedly construed by the

Magistrate Judge affected the resulting Report and Recommendation." Doc. 57 at 4. (citations and quotation marks omitted). Defendants argue these objections (as well as the rest of Affinity's objections) lack specificity as Rule 72(b)(2) requires; however, the Court declines to overrule any of Affinity's objections based and this contention.

Court must first decide whether the '379 Patent's claims are directed to an abstract idea—a patent-ineligible subject matter—before proceeding to step two of the *Mayo/Alice* analysis. In doing so, the Court is instructed to evaluate the patent claims "[o]n their face[.]" *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, —— U.S. ——, ——, 134 S.Ct. 2347, 2356, 189 L.Ed.2d 296 (2014). At step one, "a detailed examination of the asserted claims, either individually or as an ordered combination[,]" is not required. *Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, No. 12–10943–FDS, 2015 WL 1943826 (D.Mass. Apr. 28, 2015) (citing *Alice*, 134 S.Ct. at 2356); *Mayo Collaborative Servs. v. Prometheus Labs.*, —— U.S. ——, ——, 132 S.Ct. 1289, 1293, 182 L.Ed.2d 321 (2012). Rather, at step one "the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract." *Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167, 1173 (C.D.Cal. 2014).

Affinity argues that the '379 Patent is tangible and concrete because it uses cell phones and downloadable applications. But under this view, it is difficult to foresee any patent that utilizes a computer component classified as abstract. The *Alice* opinion discussed as follows:

> The fact that a computer "necessarily exist[s] in the physical, rather than purely conceptual realm" is beside the point. There is no dispute that a computer is a tangible system (in § 101 terms, a "machine"), or that many computer-implemented claims are formally addressed to patent-eligible subject matter. But if that were the end of the § 101 inquiry, an applicant could claim any principle of the physical or social sciences by reciting a computer system

configured to implement the relevant concept.

134 S.Ct. at 2358–59.

Here, the Court agrees with the Magistrate Judge's conclusion and method in which he found that "the purpose of the '379 Patent [is for] the dissemination of regionally broadcast[ed] content to users outside the region and that such purpose is a well-known, longstanding, commercial business practice[.]" Doc. 53 at 17. The Court finds Affinity's objection arguing that Patent '379 is tangible and concrete unpersuasive.

In addition, although Affinity argues that the Magistrate Judge "erred by expanding the categories of recognized 'abstract ideas,'" the Supreme Court has declined to "delimit the precise contours of the 'abstract ideas' category...." *Alice*, 134 S.Ct. at 2357. Indeed, nothing in *Alice* prohibits the Court from identifying a patent as an abstract idea that is neither a mathematical algorithm nor a fundamental economic practice. *See id.* The Court agrees with the Magistrate Judge's reasoning that *Alice* allows for "the lower courts to develop the [abstract idea] category on a case-by-case basis." Doc. 53 at 11.

Finally, the Magistrate Judge did not err in utilizing a "quick look" test in step one before moving to step two of his analysis. *Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167, 1173 (C.D.Cal.2014) ("Step one is a ... 'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility. If a claim's purpose is abstract, the court looks with more care at specific claim elements at step two."). The more recent *Internet Patents* case is similarly informative, explaining that "we start [the § 101 analysis] by ascertaining the basic character of the subject matter[.]" *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348, 2015 WL

3852975, at *4 (Fed.Cir.2015). Sister courts within the Western District of Texas have also accurately followed the Supreme Court and Federal Circuit's precedent in step one. *See Morales v. Square, Inc.,* 75 F.Supp.3d 716, 724, 2014 WL 7396568, at *6 (W.D.Tex.2014) ("In determining whether a claim is directed to an abstract idea, courts look past the claim language to '*the purpose of the claim*—in other words, what the invention is trying to achieve.' ") (quoting *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,* 59 F.Supp.3d 974, 991 (C.D.Cal.2014) (emphasis added)). The Court overrules Affinity's objection to the Magistrate Judge's application of the "quick look" test for step one of his § 101 analysis.

### III. The Magistrate Judge Did Not Err in Finding that the '379 Patent Claim Fails to Cite an Inventive Concept.

Affinity contends that the Magistrate Judge erred in his step two analysis because the '379 Patent contains an inventive concept. More specifically, Affinity's objections argue that: (1) case law does not support the Magistrate Judge's application of a technological arts test; (2) the over-the-air downloadable application was not generic, conventional, well-known, or routine as of March 2000; (3) the claim elements as a whole were not generic, conventional, well-known, or routine as of March 2000; (4) the disputes on this topic raise factual issues that should not be decided on the pleadings; and (5) the claims of the '379 Patent pass the machine-or-transformation test. Doc. 56 at 16.

The Magistrate Judge did not err in his application of the *Alice* decision by citing to Judge Mayer's opinion, which deemed that *Alice* "for all intents and purposes, set out a technological arts test for patent eligibility." *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 717 (Fed.Cir.2014) (Mayer, J., concurring). In *Alice,* the Su-

preme Court found that the asserted method and systems claims did not transform an abstract idea into a patent-eligible invention in part because "the claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea ... using some unspecified, generic computer." 134 S.Ct. at 2360 (citing *Mayo Collaborative Servs. v. Prometheus Labs.,* —— U.S. ——, ——, 132 S.Ct. 1289, 1298, 182 L.Ed.2d 321 (2012)). In the instant case, the Magistrate Judge followed this precedent in finding that "Claim 1 takes the abstract idea and says 'apply it' to a wireless, cellular telephone device acting as a generic computer." Doc. 53 at 22–23. The Court finds the Magistrate Judge did not err in his reliance upon *Alice* to the extent it set forth a "technological arts" test; the appropriate legal analysis was applied irrespective of the name of the test in which Affinity would like to attach to it in an effort to articulate an objection.

Additionally, the Magistrate Judge did not err in finding that the over-the-air downloadable application with graphical user interface and claim elements as a whole did not amount to an inventive concept. The Magistrate Judge wrote the following:

> Claim 1 merely states that the application "enables" the device to present a graphical user interface so a user can select what date that user wants to stream. Both the claim and the specification are devoid of any teaching or blueprint explaining how the device can do what it purports to do. The claim is silent as to how the downloadable application with graphical user interface aids the system or method, the extent to which it aids the system or method, nor does it explain the significance of the downloadable application with graphical user interface to performance of the system or method.

Doc. 53 at 22. As a result, the court found that the downloadable application with graphical user interface and the graphical user interface, when considered standing alone, does not amount to an inventive concept. *Id.* at 22–23. The Court agrees, and contrary to Affinity's claim that the Magistrate Judge inquired about requirements reserved for § 112, the Federal Circuit has invalidated patents under § 101 for not qualifying as an inventive concept because it did not specify how the patent performs the steps claimed in the patent. *See Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1333 (Fed.Cir.2012). Furthermore, the Court finds that the Magistrate Judge's analysis of *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258 (Fed.Cir.2014), was not error because the claims "specif[ied] how interactions with the Internet are manipulated to yield a desired result...." As the Magistrate Judge noted, *supra,* no such explanation as to how the downloadable application disseminates content to a remote user is provided within the '379 Patent claims, and thus *DDR Holdings* is distinguishable from the case at hand.

Affinity's objection contending that the Magistrate Judge failed to consider each claim of the '379 Patent as a whole (and instead only considered each element individually) is without merit. The *Alice* decision instructs courts to consider claim elements both individually and as an ordered combination. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* — U.S. —, —, 134 S.Ct. 2347, 2355, 189 L.Ed.2d 296 (2014). This is precisely what the Magistrate Judge did. Doc. 53 at 26 ("[T]he ... claims, ... either individually *or as an ordered combination,* all describe conventional, well known and routine concepts, accomplished using computer hardware and software recited in 'purely functional and generic' terms and are, therefore, invalid under 35 U.S.C. § 101.") (quoting *Alice,* 134 S.Ct. at 2360) (emphasis added). Regardless, the

purpose of considering claims in an ordered combination is to determine whether the claims "'ad[d] [some]thing ... that is not already present when the steps are considered separately.'" *Alice,* 134 S.Ct. at 2359 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* — U.S. —, —, 132 S.Ct. 1289, 1298, 182 L.Ed.2d 321 (2012)). Here, Affinity did not specify any combination of elements that were not already present when the well-known and conventional elements are considered individually. Affinity's contention that the Magistrate Judge erred in considering the claim elements as a whole is overruled.

Affinity's objection to the Magistrate Judge's factual determinations regarding what was conventional and routine at the time of the invention is also without merit. A § 101 determination is a question of law, and "[c]ourts frequently make findings when deciding purely legal questions." *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,* 59 F.Supp.3d 974, 978 n. 6 (C.D.Cal. 2014). Patent "[e]legibility questions mostly involve general historical observations, the sort of findings routinely made by courts deciding legal questions[,]" and "[t]he Federal Circuit has noted that § 101 analysis if 'rife with underlying factual issues.'" *Id.* (quoting *Ultramercial, Inc. v. Hulu, LLC,* 722 F.3d 1335, 1339 (Fed.Cir. 2013)). Further, several Federal Circuit cases have made general historical observations in ruling on a 12(b)(6) motion. *See, e.g., buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1354–55 (Fed.Cir.2014); *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 722–23 (Fed.Cir.2014) (Mayer, J., concurring); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1347 (Fed.Cir.2014). Therefore, the Magistrate Judge's reliance on the patent specification and use of taking judicial notice of well-known, general historical observations was not error.

As to Affinity's final step two objection, the Court disagrees with its argument that the '379 Patent claims pass the machine-or-transformation test. A claimed process can be patent eligible under the machine-or-transformation test if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski v. Kappos,* 561 U.S. 593, 601, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (quotation marks omitted). Only the first prong applies in this case. Doc. 53 at 18–19. The Magistrate Judge explained that:

> [A] general purpose computer, coupled with the internet, . . . fail[s] the machine test. . . . In reviewing Claim 1, the Court finds [Patent '379] fails the machine or transformation test. Specifically, in analyzing Claim 1, Affinity merely takes the abstract idea identified above and applies it to a generic, electronic device—in this case, a wireless cellular telephone device operating as a ubiquitous, information-transmitting medium, not a novel machine. . . . [T]he Court finds the claim merely sets forth routine and generic processing and storing capabilities generally. The claim describes a generic network with a non-transitory storage medium—which could be any kind of memory. The claim only further describes that the network sends and receives [regional broadcast] data in a streaming form. I[ ] find[ ] Affinity's '379 patent fails the machine or transformation test[.]

*Id.* at 19–20 (citations and quotation marks omitted). Affinity's objection and argument in support fails to persuade the Court to depart from the Magistrate Judge's sound reasoning. The Magistrate Judge did not err in his machine-or-transformation test analysis.

## IV. The Magistrate Judge Did Not Err in Finding the '379 Patent's Dependent Claims Are Invalid.

Affinity next claims that the Magistrate Judge's analysis of the '379 Patent's dependent claims was conclusory and inadequate; however, Defendants are correct that a court's § 101 analysis of dependent claims that fail to add an inventive concept are generally briefly addressed. *See Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1349, 2015 WL 3852975, at *6 (Fed.Cir.2015); *Content Extraction,* 776 F.3d at 1348–49. The Federal Circuit has even disposed of claims without even a conclusory supporting analysis. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.,* 788 F.3d 1371, 1378 (Fed.Cir.2015) ("None of the remaining asserted dependent or independent claims differ substantially from [the claims explicitly addressed].").

In the instant case, the Magistrate Judge found as a matter of law that "the dependent claims do not add something to the abstract idea that is an 'integral' or 'significant part' of the invention." Doc. 53 at 26. Because the Court agrees with the Magistrate Judge that the claims in this case "add only trivial limitations insufficient to confer patentability[,]" the Magistrate Judge did not err in his dependent claims analysis. *Id.* at 24.

## V. The Magistrate Judge's '379 Patent Preemption Analysis Was Not Error.

Affinity's final objection asserts that the Magistrate Judge erred in his preemption analysis, but the Court disagrees. The Magistrate Judge did not err in concluding that "[t]he asserted claims of the '379 Patent preempt the dissemination of regionally broadcasted content to a user outside the region on an electronic device that utilizes cellular communication, thereby

monopolizing the idea on a ubiquitous device...." *Id.* at 27–28.

Irrespective of the Court's agreement with the Magistrate Judge's preemption analysis, however, the issue is moot in light of the Court's adoption of the findings and recommendation that the claims are patent ineligible under the two-step *Mayo/Alice* test. The Federal Circuit recently held that, "[w]here a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, ... preemption concerns are fully addressed and made moot." *Ariosa,* 788 F.3d at 1379. Therefore, Affinity's preemption objection is overruled.

## CONCLUSION

The Magistrate Judge, in a thorough review of the case and applicable law, has recommended that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted and that the case be dismissed. Further, the Magistrate Judge has recommended that Defendants' pending Motion to Transfer Venue to the Western District of Texas, Austin Division be denied as moot.

Having carefully reviewed the report and Plaintiff's objections de novo, the Court is persuaded that the Magistrate Judge's findings and recommendation should be adopted. Accordingly it is

**ORDERED** that the Magistrate Judge's findings and recommendation are **ADOPTED.** It is further

**ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED,** and the case is **DISMISSED.** It is further

**ORDERED** that Defendants' Motion to Transfer Venue is **DENIED AS MOOT.** It is further

**ORDERED** that any motions the Court or the Magistrate Judge has not previously ruled upon are **DENIED.**

## *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

JEFFREY C. MANSKE, United States Magistrate Judge.

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C) and Rules 1(h) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court is Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6). Defs.' Mot. (ECF No. 19). The Motion has been fully briefed (Pl.'s Resp. (ECF No. 25) and Defs.' Reply (ECF No. 33)), and oral argument[1] was held on May 12, 2015. For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion be **GRANTED** with respect to all of the asserted claims of U.S. Patent No. 7,970,379.

### I. Background

Plaintiff is Affinity Labs of Texas, LLC, ("Affinity"), an innovation consulting firm founded in 2008 by Russell White and Harlie Frost. Affinity is the owner of a large portfolio of technology-based patents. Defendants are four companies, all in the business of broadcast media.

Affinity filed suit against each Defendant separately,[2] alleging infringement of

---

1. Citations to the hearing transcript are hereinafter referred to as "Tr."

2. *See Affinity Labs of Texas, LLC v. NBA Media Ventures, LLC,* No. 6:15–cv–00031–WSS–JCM (W.D.Tex. Apr. 6, 2015); *Affinity Labs of Texas, LLC v. NHL Enterprises, L.P.,* No. 6:15–cv–00032–WSS–JCM (W.D.Tex. Apr. 6, 2015); *Affinity Labs of Texas, LLC v. MLB Advanced Media, L.P.,* 6:15–cv–00033–WSS–JCM (W.D.Tex. Apr. 6, 2015).

Patent No. 7,970,379 ("the '379 Patent"). The cases were referred to the undersigned for all purposes (ECF No. 9) and subsequently consolidated for pretrial purposes only by joint motion of the parties (ECF No. 22).

The '379 Patent, entitled "Providing Broadcast Content," claims a means for delivering regionally broadcasted radio or television content to an electronic device located outside a region of the regionally broadcasted content. '379 Patent (filed June 30, 2009). According to the specification, the patent addresses the following problem:

> [A] user may want to listen to a radio station located in a remote location wherein conventional radio receivers could not receive the desired broadcast. For example, a person living in Houston, Tex. may not be able to receive a radio broadcast signal from a radio station in Seattle, Wash. utilizing a conventional radio receiver.

*Id.* col. 15 l. 58–64. The patents in suit claim (1) a method for streaming regional content outside of a specific geographic location ("the method claims"), and (2) a system configured to carry out the method on a wireless cellular telephone device ("the system claims"). *Id.* at [57].

At the hearing on Defendants' Motion, the parties agreed that Claim 1 is representative. It reads as follows:

> 1. A broadcast system, comprising:
>
> a network based resource maintaining information associated with a network available representation of a regional broadcasting channel that can be selected by a user of a wireless cellular telephone device; and
>
> a non-transitory storage medium including an application configured for execution by the wireless cellular telephone device that when executed, enables the wireless cellular telephone device:

> to present a graphical user interface comprising at least a partial listing of available media sources on a display associated with the wireless cellular telephone device, wherein the listing includes a selectable item that enables user selection of the regional broadcasting channel;
>
> to transmit a request for the regional broadcasting channel from the wireless cellular telephone device; and to receive a streaming media signal in the wireless cellular telephone device corresponding to the regional broadcasting channel, wherein the wireless cellular telephone device is outside of a broadcast region of the regional broadcasting channel, wherein the wireless cellular telephone device is configured to receive the application via an over the air download.

*Id.* at col. 18 l. 21–44. Defendants jointly seek to dismiss Affinity's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that the '379 Patent is invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. In June 2014, the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* a seminal decision in which the Court held that patent claims designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary were drawn to a patent ineligible abstract idea and thus not patent eligible under § 101. —— U.S. ——, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014). *Alice* has engendered a wave of decisions from lower courts addressing the issue of patent eligibility under § 101.

Affinity previously asserted the '379 Patent in the Austin Division of the Western District of Texas in *Affinity Labs of Tex., LLC v. Clear Channel Broad., Inc.,* No. 1:12–CV–205–LY, 2014 WL 1699063 (W.D.Tex. Apr. 29, 2014). In a *Markman* order, judge Yeakel held that the purpose

of the invention described in the '379 Patent at issue is "to allow a user to consume 'regionally broadcasted content' when the user is physically locked outside of the range of that regionally broadcasted content." *Id.* at *6. In *Clear Channel*, Judge Yeakel was not presented with the opportunity to analyze whether the '379 Patent was invalid under § 101.[3]

## II. Relevant Law

Section 101 of the Patent Act defines patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Section 101 also "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S.Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, — U.S. —, 133 S.Ct. 2107, 2116, 186 L.Ed.2d 124 (2013)) (internal quotation marks omitted). "[T]he concern that drives this exclusionary principle [i]s one of pre-emption." *Alice*, 134 S.Ct. at 2354 (citing *Bilski v. Kappos*, 561 U.S. 593, 611, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010)). These categories are not patent-eligible because "they are the basic tools of scientific and technological work" "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, — U.S. —, 132 S.Ct. 1289, 1293, 182 L.Ed.2d 321 (2012) (citations omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it[,]" thereby thwarting the primary object of the patent laws. *Id.* The Supreme Court has "repeatedly empha-

sized this ... concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* at 1301; *see also O'Reilly v. Morse*, 56 U.S. 62, 15 How. 62, 14 L.Ed. 601 (1853). However, the Court has also recognized the need to "tread carefully in construing this exclusionary principle, lest it swallow all of patent law." *Alice*, 134 S.Ct. at 2354. The Supreme Court recognized that, at some level, "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S.Ct. at 1293. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. *See Diamond v. Diehr*, 450 U.S. 175, 187, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981). Applications of such concepts "to a new and useful end" remain eligible for patent protection. *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972).

In *Alice*, the Supreme Court identified a "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S.Ct. at 2355 (citing *Mayo*, 132 S.Ct. at 1296–97). This framework reflects the two-part test articulated by the Supreme Court in *Mayo*.

Under the *Mayo/Alice* test, a court must first ask if the claim is "directed to one of those patent-ineligible concepts"—a law of nature, physical phenomenon, or abstract idea. *Alice*, 134 S.Ct. at 2355. If it is, the court moves to the second step. At step two, the court asks "[w]hat else is there in the claims before us?" *Mayo*, 132 S.Ct. at 1297. To answer that question, the court considers the elements of each claim both individually and "as an ordered combina-

---

**3.** Defendants filed a separate joint Motion to Transfer Venue to the Austin Division of the Western District of Texas pursuant to 28 U.S.C. § 1404(a) based on Judge Yeakel's familiarity with the '379 Patent and related technology. (ECF No. 18).

tion" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id.* at 1297–98. This analysis serves as a search for an "'inventive concept'"—i.e., an element or combination of elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 1294.

## III. Analysis

### A. Ripeness and Burden of Proof

Affinity argues that Defendants' Motion is unripe because (1) fact issues exist that cannot be decided on a 12(b)(6) motion because Defendants' Motion requests the Court find that certain claim elements and components are "well known" without a proper evidentiary basis for the conclusion, Pl.'s Resp. at 9–10, and (2) because claim construction has not occurred yet. *Id.* at 11–12. Additionally, Affinity alleges that the proper burden of proof for deciding Defendants' Motion is the clear and convincing evidence standard. Accordingly, the Court will address the timeliness of Defendants' Motion and the appropriate standard of proof.[4]

Under Fed.R.Civ.P. 12(b)(6), a court may dismiss an action that fails to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)) (internal quo-

tation marks omitted). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955 (internal citations omitted) (parentheticals in original). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ The Federal Circuit has confirmed that determining patent eligibility under § 101 is appropriate at the pleadings stage. "Issues of patent-eligible subject matter are questions of law." *Cyber-Source Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed.Cir.2011). *See, e.g., Content Extraction*, 776 F.3d at 1349 (affirming district court's resolution of a motion to dismiss at the pleading stage); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed.Cir.2014) (*Ultramercial III*) (Mayer, J., concurring) (affirming district court's decision granting motion to dismiss infringement claim for failure to state patent-eligible subject matter); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed.Cir.2014) (affirming district court's decision to grant judgment on the pleadings based on § 101). "[S]ection 101 imposes 'a threshold test,' . . . one that must be satisfied before a court can proceed to

4. The Court of Appeals for the Federal Circuit looks to regional circuit law for the resolution of procedural issues, such as the standard of review applied to challenges to a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed.Cir.2014) ("We review a district court's dismissal for failure to state a claim under the law of the regional circuit.") (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed.Cir.2012)).

consider subordinate validity issues such as non-obviousness under 35 U.S.C. § 103 or adequate written description under 35 U.S.C. § 112." *Ultramercial III,* 772 F.3d at 718 (Mayer, J., concurring) (citing *Bilski,* 561 U.S. at 602, 130 S.Ct. 3218). "[S]ubject matter eligibility is the primal inquiry, one that must be addressed at the outset of litigation." *Ultramercial III,* 772 F.3d at 717 (Mayer, J., concurring). The Federal Circuit's declaration on this point is rooted in sound policy. Addressing § 101 at the outset of litigation has "a number of salutary effects:" it "conserve[s] scarce judicial resources," "provides a bulwark against vexatious infringement suits," and protects the public at the outset from "patents that stifle innovation and transgress the public domain." *Id.* at 719–20.

Furthermore, in this case the § 101 inquiry is properly addressed prior to claim construction. "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction,* 776 F.3d at 1349 (citing *Ultramercial III,* 772 F.3d at 714–15); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1273–74 (Fed.Cir.2012) (finding that the district court did not err by declaring claims patent-ineligible at the pleading stage without first construing the claims or allowing the parties to conduct fact discovery and submit opinions from experts supporting their claim construction positions). However, completing claim construction prior to a § 101 analysis may be appropriate under certain circumstances. *See Bancorp,* 687

F.3d at 1273–74. For instance, "it will ordinarily be desirable—and often necessary—*disputes* prior to a[§ ] 101 analysis." *Id.* (emphasis supplied).

■ To deny Defendants' 12(b)(6) motion as premature because *Markman* has not occurred makes little sense. As Defendants point out, Affinity has not identified a disputed term requiring construction and has therefore not demonstrated why claim construction is necessary to determine whether the patent claims patent-eligible subject matter. Defs.' Reply at 2–3;[5] *see TriPlay v. WhatsApp Inc.,* No. 13–1703–LPS, 2015 WL 1927696, at *6 (D.Del. Apr. 28, 2015) (citing *Open Text S.A. v. Alfresco Software Ltd.,* No. 13–cv–04843–JD, 2014 WL 4684429, at *3 (N.D.Cal. Sept. 19, 2014) ("the parties have not sought construction of any terms … and this lack of dispute over the proper construction of the asserted claims confirms that it is unnecessary to engage in claim construction before addressing validity under [§ ] 101")). Furthermore, as discussed herein, the asserted claims are drawn to an abstract idea and there is no reasonable construction of any term that would serve to bring the claims within the ambit of patentable subject matter. Accordingly, this Court's § 101 analysis is appropriate at the pleadings stage.

A final preliminary issue meriting discussion is what burden of proof is applicable to a § 101 challenge. There is no clear mandate from the Supreme Court or the Federal Circuit in this regard post-*Alice,* and lower courts are split as to whether the clear and convincing evidentiary standard should still be applied in a challenge to a patent's eligibility under § 101.[6] At

---

**5.** At oral argument, the Court stated on the record that Affinity did not identify—in its brief or otherwise—a single claim term in need of construction. Affinity neither objected to the Court's statement nor attempted to identify any disputed term. *See* Tr. at 100.

**6.** *Ultramercial, Inc. v. Hulu, LLC,* 722 F.3d 1335, 1339 (Fed.Cir.2013) *(Ultramercial II),* vacated sub nom. *WildTangent, Inc. v. Ultramercial, LLC,* —— U.S. ——, 134 S.Ct. 2870, 189 L.Ed.2d 828 (2014) ("the *only* plausible reading of the patent must be that there is clear

the hearing, the parties agreed that well-settled law requires application of the clear and convincing evidentiary standard.[7] However, as discussed above, § 101 involves a legal analysis as to whether the basic character of the claimed subject matter is patent ineligible and thus largely implicates questions of law. Therefore, to the extent legal questions bear on the ultimate question of subject matter eligibility, the court will decide those questions as a matter of law.[8] Although the issue of invalidity under § 101 presents a question of law, the court recognizes that a legal conclusion "may contain underlying factual issues." *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed.Cir.2013); *Ultramercial II*, 722 F.3d at 1339 ("[T]he analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues."). To the extent questions

and convincing evidence of ineligibility"); *TriPlay*, 2015 WL 1927696, at *5 ("even assuming that the 'clear and convincing' evidence standard is applicable to [§ ] 101 challenges, it would apply only to the resolution of factual disputes, not to the resolution of pure issues of law") (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S.Ct. 2238, 2242–43, 180 L.Ed.2d 131 (2011) (footnote omitted)); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05–CV–4811, 2015 WL 774655, at *3 (N.D.Ill. Feb. 24, 2015) ("until the Federal Circuit or the United [States] Supreme Court mandates otherwise, CQG must show by clear and convincing evidence that the patents-in-suit claim patent-in-eligible subject matter."); *Bascom Research, LLC v. LinkedIn, Inc.*, No. 12–CV–06293–SI, 77 F.Supp.3d 940, 945, 2015 WL 149480, at *4 (N.D.Cal. Jan. 5, 2015) ("an alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence"); *Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167, 1170 (C.D.Cal. 2014) ("Federal Circuit precedent requires courts to apply the [clear and convincing evidence] standard to § 101 challenges") (citing *Ultramercial II*, 722 F.3d at 1339); *cf. Content Extraction*, 776 F.3d at 1345–49 (in which the Federal Circuit affirmed a dismissal under § 101 at the Rule 12(b)(6) stage without discussion of any disputed issues of fact); *Ultramercial III*, 772 F.3d at 720–21 (Mayer, J., concurring) ("Although the Supreme Court has taken up several [§ ] 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the [§ ] 101 calculus.") (internal citation omitted); *Shortridge v. Found.*

*Constr. Payroll Servs., LLC*, No. 14–cv–04850–JCS, 2015 WL 1739256, at *7 (N.D.Cal. Apr. 14, 2015) ("Although the clear and convincing evidence standard is not applicable to the Motion, Defendants, as the parties moving for relief, still bear the burden of establishing that the claims are patent[-]ineligible under § 101."); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14–7004, 14–7006(JLL), 100 F.Supp.3d 405, 411, 2015 WL 1810378, at *6 (D.N.J. Apr. 20, 2015) ("With no authoritative law binding the Court as to an applicable standard, the Court adopts Judge Mayer's approach and will not afford Plaintiff's Patents the presumption of subject matter eligibility."); *Modern Telecom Sys. LLC v. Earthlink Inc.*, No. SA CV 14–0347–DOC, 2015 WL 1239992, at *7 (C.D.Cal. Mar. 17, 2015) ("Because, ordinarily, no evidence outside the pleadings is considered in resolving a motion to dismiss or a motion for judgment on the pleadings, it makes little sense to apply a 'clear and convincing evidence' standard-a burden of proof-to such motions.") (emphasis removed); *OpenTV, Inc. v. Apple, Inc.*, No. 14–cv–01622–HSG, 2015 WL 1535328, at *3 (N.D.Cal. Apr. 6, 2015) (rejecting the clear and convincing evidence standard and applying the Rule 12(b)(6) standard).

7. *See* Tr. at 80–81.

8. It is within this Court's province to make findings when deciding the legal question of whether the basic character of the claimed subject matter is patent ineligible. "Courts frequently make findings when deciding purely legal questions. Eligibility questions mostly involve general historical observations, the sort of findings routinely made by courts deciding legal questions." *Cal. Inst. of Tech. v.*

of fact exist, the Court will apply the clear and convincing evidence standard.

## B. *Mayo/Alice* Step 1: Are the claims of the '379 Patent directed to an abstract idea?

■ The Court must first evaluate the patent claims "[o]n their face" and determine whether the claims are directed to patent-ineligible subject matter—"laws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S.Ct. at 2355–56. The instant case only presents the question of whether Plaintiff's patent is directed to an abstract idea.

■ The Supreme Court and lower courts have provided some important principles to direct courts in evaluating whether an idea is abstract. At step one, "the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract." [9] *Enfish*, 56 F.Supp.3d at 1173. "Application of the first step does not include a detailed examination of the asserted claims, either individually or as an ordered combination; that analysis is properly lodged within step two." *Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, No. 12–10943–FDS, 2015 WL 1943826 (D.Mass. Apr. 28, 2015) (citing *Alice*, 134 S.Ct. at 2356 and *Mayo*, 132 S.Ct. at 1297). Instead, courts should recite a claim's pur-

pose at a reasonably high level of generality. *Enfish*, 56 F.Supp.3d at 1174; *Cal. Inst. of Tech.*, 59 F.Supp.3d at 991–92. Step one is a "quick look" test, the purpose of which is to identify a risk of preemption and ineligibility. *Enfish*, 56 F.Supp.3d at 1173. If a claim's purpose is abstract, the court looks with more care at the specific claim elements in step two. *Id.* at 1174; *Cal. Inst. of Tech.*, 59 F.Supp.3d at 991–92. All of the claim limitations need not be abstract. The patent may not pass § 101 muster if "the concept embodied by the majority of the limitations" describes an abstract idea. *See Ultramercial III*, 772 F.3d at 715 (holding that "[a]lthough certain additional limitations, such as consulting an activity log, add a degree of particularity, *the concept embodied by the majority of the limitations* describes only the abstract idea of showing an advertisement before delivering free content.") (emphasis added).

The Supreme Court did not "delimit the precise contours of the 'abstract ideas' category" in *Alice*—instead, it left the lower courts to develop the category on a case-by-case basis. 134 S.Ct. at 2357. Nevertheless, over the course of several cases, the Supreme Court has identified several categories of precluded subject matter. For example, mathematical algorithms, including those executed on a generic computer, are patent-ineligible.[10] Similarly, certain scientific principles are patent-ine-

---

*Hughes Commc'ns Inc.*, 59 F.Supp.3d 974, 979 n. 6 (C.D.Cal.2014) (citations omitted).

9. The Supreme Court took this approach in *Alice* (concluding that the steps embodied in the claims were meant to achieve the purpose of mitigating settlement risk); in *Bilski* (characterizing the claims in terms of the invention's purpose—hedging risk); and in *Mayo* (characterizing the claims in terms of the invention's purpose, which was applying a natural law). The Federal Circuit has followed suit: *Content Extraction*, 776 F.3d at 1347 ("data collection, recognition, and storage"); *Ultramercial III*, 772 F.3d at 714 (holding that "the abstract idea at the heart

of" the patent-in-suit was "that one Can use [an] advertisement as an exchange for currency"); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed.Appx. 1005, 1008 (Fed.Cir.2014) ("managing a game of Bingo"); and *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. Appx. 988, 992 (Fed.Cir.2014) ("categorical data storage").

10. *See Benson*, 409 U.S. at 71–72, 93 S.Ct. 253 (finding a claim for a method of converting binary-coded decimal numerals into pure binary numerals using a mathematical formula in a general-use computer was a claim on an idea); *Parker v. Flook*, 437 U.S. 584, 586, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978) (finding

ligible. *See Mayo*, 132 S.Ct. at 1293 (finding that a claim describing relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a drug will cause harm set forth laws of nature). Additionally, some fundamental economic and conventional business practices are also abstract ideas. *See Bilski*, 561 U.S. at 609, 130 S.Ct. 3218 (finding the "fundamental economic practice" of hedging to be patent ineligible); *Alice*, 134 S.Ct. at 2356 (finding that a "method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement" was a method of "organizing human activity" and therefore abstract).

Since *Alice*, the Federal Circuit has issued seven decisions interpreting § 101. This body of case law has further defined the contours of the abstract ideas category.[11] In addition, recent district court opinions post-*Alice*, including a decision

from within this District, have found abstract ideas embodied in claims describing a wide variety of systems and processes.[12]

Defendants contend the '379 Patent is abstract because it is "directed to an age-old concept of making broadcast content from one region available in another region—something performed since the first time someone held the phone up to the radio so that a distant friend could hear the broadcast." Defs.' Mot. at 7. According to Defendants, the availability in one region of programming that originated in another is a "decades-old idea" that "has been a familiar and unremarkable part of the media landscape." *Id.* at 1, Furthermore, Defendants argue the claims do not recite any new technology that makes this possible but merely "present a straightforward description of the conventional business model, accompanied by a generic recitation of a conventional cellular phone with its familiar parts (buttons[,] memory, a

a claim for a method of computing an alarm limit in the catalytic conversion of hydrocarbons using a mathematical algorithm included a law of nature); *Diehr*, 450 U.S. at 178, 101 S.Ct. 1048 (finding that a process for curing rubber involving use of a mathematic equation encompassed a law of nature).

11. The Federal Circuit invalidated a patent that claimed the business method of using "an advertisement as an exchange for currency" (*Ultramercial III*, 772 F.3d at 714); a patent directed to another business method that was "a well-known, and widely understood concept—a third party guarantee of a sales transaction—and then applied that concept using conventional computer technology and the Internet" (*buySAFE*, 765 F.3d at 1352 (Fed.Cir.2014)); a patent directed to a well-known practice in the banking industry of storing and collecting data, a function that "humans have always performed," especially in the banking industry (*Content Extraction*, 776 F.3d at 1347); a patent that managed "a bingo game while allowing a player to repeatedly play the sets of numbers in multiple sessions" because the idea "consists solely of mental steps which can be carried out by a human using pen and paper" (*Planet Bingo*,

576 Fed.Appx. at 1007); a claim describing the process of taking two data sets and combining them into a single data set known as a "device profile" recited the "abstract process of gathering and combining data that does not require input from a physical device" (*Digitech Image Techs., LLC v. Elec. for Imaging, Inc.*, 758 F.3d 1344 (Fed.Cir.2014)); and patent claims directed to identifying alterations of a gene by comparing the patient's gene with a "wild-type" gene and identifying inconsistencies arising therefrom (*In re BRCA1–and BRCA2–Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755 (Fed.Cir. 2014)). However, in *DDR Holdings v. Hotels.com, L.P.*, the Federal Circuit found that patents directed to systems and methods of generating a composite web page that combines certain visual elements of a "host" website with content of a third-party merchant were patent-eligible. 773 F.3d 1245, 1259 (Fed.Cir.2014).

12. *See Morales v. Square, Inc.*, 75 F.Supp.3d 716, 724–25, 2014 WL 7396568, *6 (W.D.Tex. 2014) (cataloging cases); *see id.* at 724, at *5–6 ("The Federal Circuit's decision in *Digitech Image Techs., LLC v. Elec. for Imaging, Inc.*, 758 F.3d 1344 (Fed.Cir.2014), however, indi-

display, a housing) and an application, downloaded to the phone, that receives a stream of data." *Id.*

In its briefing, Affinity suggests that the universe of patent-ineligible abstract ideas is limited to the two categories the Federal Circuit identified in *DDR Holdings:* "mathematical algorithms" and "fundamental economic and conventional business practices"—neither of which encompasses the '379 Patent. Pl.'s Resp. at 6 (citing *DDR Holdings*, 773 F.3d at 1256). At oral argument, Affinity vehemently objected to the process of ascertaining an invention's purpose at step one and then determining whether that purpose is abstract—particularly when the process involves considering whether the purpose the invention purports to achieve is longstanding or well-known. Affinity argued that, on some level, every invention can be distilled to a general purpose or industry, and if that industry is either longstanding or well-known, the patent is deemed abstract. By taking this approach, Affinity argued, lower courts have ignored the "doctrine of restraint"[13] set forth in the Supreme Court decisions and have dramatically and improperly expanded the limited category of patent-ineligible exceptions in a manner that risks swallowing all of patent law.

At the hearing, the Court offered Affinity the opportunity to identify an alternative test Courts have applied post-*Alice* when evaluating patents for abstractness.[14] The Court also gave Affinity the opportunity to articulate a test that courts *should* apply in lieu of the objected-to approach.[15] In response, Affinity suggested the Court merely look at the patent's claims and ask whether the claims incorporate a concept that is something like one of the practices found patent-ineligible by the Supreme Court in *Bilski*, 561 U.S. 593, 130 S.Ct. 3218, *Alice*, 134 S.Ct. 2347, *Benson*, 409 U.S. 63, 93 S.Ct. 253, *Diehr*, 450 U.S. 175, 101 S.Ct. 1048, and *Flook*, 434 U.S. 1033, 98 S.Ct. 764.[16] Affinity in effect asks the Court to ignore the myriad Supreme Court, Federal Circuit, and district court decisions suggesting that a court must first identify the purpose of the claim when evaluating a patent for abstractness.[17] In sum, Affinity's suggested approach lacks specificity, is difficult to apply because it does not provide any practical guidance, and is not the law. Accordingly, the Court rejects Affinity's position and will ascertain the purpose of the patent.

The Court finds the purpose of the '379 Patent is the dissemination of regionally broadcasted content to users outside the region. In reviewing the: system claims, the Court notes the idea embodied by the majority of the limitations,[18] eleven of the

---

cates that the abstract ideas category is broad.").

**13.** *See* Tr. at 32.

**14.** *See id.* at 36.

**15.** *See id.* at 35–36.

**16.** *See id.* at 27, 38, 45.

**17.** *See* n. 9; *see also Cal. Inst. of Tech.*, 59 F.Supp.3d at 993–94 (to determine whether a claim is directed to an abstract idea, the court must first identify the "purpose of the claim"); *Morales*, 75 F.Supp.3d at 724, 2014 WL 7396568, at *6 ("In determining whether

a claim is directed to an abstract idea, courts look past the claim language to 'the purpose of the claim—in other words, what the invention is trying to achieve.'" (quoting *Cal. Inst. of Tech.*, 59 F.Supp.3d at 991–92); *Enfish*, 56 F.Supp.3d at 1173 (to determine whether a claim is directed to an abstract idea, "... the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract.'"))

**18.** *See TriPlay*, 2015 WL 1927696, at *10; *see also Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14–CV–00570–BLF, 2015 WL 1133244, at *5–6 (N.D.Cal. Mar. 10, 2015) (applying the "majority of the limitations" language from

thirteen system claims, and prominent in claim 1, is the dissemination of regionally broadcast content to users outside the region. Likewise, the majority of the method claims, and prominent in claim 14, is also the dissemination of regionally broadcast content to users outside the region. Also, the Court cannot help but note that the '379 Patent is entitled, "Providing Broadcast Content." In addition, the Abstract describes "a method for providing *broadcast content* is disclosed. The method maintains a system *to deliver regionally broadcasted content* to an electronic device *located outside a region of the regionally broadcasted content* ... (emphasis supplied)." '379 Patent, at [57]. The only reasonable construction of the patent's purpose is the dissemination of regional broadcast content to users outside the region.[19]

The Court next examines whether the purpose is abstract. *See Enfish*, 56 F.Supp.3d at 1174. As set forth in detail above, courts have invalidated patents claiming mathematical algorithms,[20] scientific relationships,[21] functions humans can perform in the mind or with pen and paper,[22] and fundamental economic and conventional business practices.[23] At issue in the instant case is whether the dissemination of regional broadcast content to users outside the region is a longstanding, commercial practice.

At the hearing, Affinity attempted to distinguish the '379 Patent by arguing that the dissemination of regional broadcast content to users outside a region is not a longstanding, commercial practice like hedging or intermediated settlement at issue in *Bilski* and *Alice,* respectively. In doing so, Affinity again cautioned the Court to avoid overgeneralization and instead urged the Court to focus on the "product."[24] Affinity suggested the product at issue in the instant case is "broadcast," a "concrete and tangible industry, [a] concrete product" that consists of the broadcast tower, the receivers, and the contract between the provider and subscriber.[25] By way of analogy, Affinity compared the broadcast "product" to an indisputably tangible product—the MRJ machine.[26] An MRI machine, Affinity argued, could be overgeneralized to the extent that the invention is characterized by its purpose—to diagnose a patient or to scan a patient like an X-ray or CAT scan.[27] Diagnosing patients is a longstanding, well-known practice, however, Affinity concluded, "no one would think to bring a 101 motion on an MRJ machine, but you could overgeneralize any claim to an MRI machine and say this is a field that's been around" and find that it is patent ineligible under this approach.[28]

Affinity relies on a faulty analogy. The '379 Patent does not claim a concrete or

---

*Ultramercial III* to hold that a claim was directed to an abstract idea).

**19.** The undersigned does not purport to distinguish its characterization of the '379 Patent's purpose with Judge Yeakel's interpretation of the '379 Patent's purpose in *Clear Channel*. Judge Yaekel's interpretation differs not in substance but merely in semantics.

**20.** *Benson,* 409 U.S. at 71–72, 93 S.Ct. 253 (1972); *Flook,* 437 U.S. at 586, 98 S.Ct. 2522; *Diehr,* 450 U.S. at 178, 101 S.Ct. 1048

**21.** *See Mayo,* 132 S.Ct. at 1293.

**22.** *See CyberSource v. Retail Decisions, Inc.,* 654 F.3d 1366, 1371–72 (Fed.Cir.2011).

**23.** *See Bilski,* 561 U.S. at 611, 130 S.Ct. 3218; *Alice,* 134 S.Ct. at 2356; *see also* n. 11.

**24.** *See* Tr. at 50–54.

**25.** *See id.* at 51.

**26.** *See id.* at 53–54.

**27.** *See id.*

**28.** *See id.*

tangible invention like an MRJ machine. Instead, the '379 Patent claims only the dissemination of broadcast *content*. Using Affinity's example, the *content* is the product that is transmitted from the broadcast tower to the ultimate receiver, be it a radio, a television, an electronic device or, as described in system claim 1, a "wireless cellular telephone device." As such, both the purpose of the patent and the fundamental economic and conventional business practice at issue in the instant case is the dissemination of regionally broadcast content to users outside the region.

The commercial practice of disseminating regionally broadcast content to users outside the region is both well-known and historically long-standing. A lifelong sports fan, the undersigned has listened to broadcasts over the radio of baseball, basketball, football, and hockey games from other regions throughout my youth to the current day. Additionally, many baseball fans who were cable subscribers in the 1970's remember watching Atlanta Braves games on the TBS superstation despite not living in Atlanta, Georgia, and in the 1980's, watching Harry Caray announce Chicago Cubs games over the WGN superstation. The above examples represent just a few of the many general historical observations that come to mind as evidence of the longstanding practice of disseminating regionally broadcast content to users outside the region.

As a final comment on the step one *Mayo/Alice* analysis, Affinity objects to the Court finding that a practice is "well-known" or a "longstanding commercial practice" on a Rule 12(b)(6) motion on the grounds that such a finding is without evidentiary support and improper at the 12(b)(6) stage. Pl.'s Resp. at 20. The

Court notes, however, that "[e]ligibility questions mostly involve general historical observations, the sort of findings routinely made by courts deciding legal questions." *See Cal. Inst. of Tech.*, 59 F.Supp.3d at 979 n. 6. Further, at oral argument, the Court directed Affinity to a number of Rule 12(b)(6) and 12(c) cases[29] decided *post-Alice* in which the Federal Circuit made general historical observations in determining whether an abstract idea is well-known and longstanding. When asked why the undersigned could not do the same, Affinity's counsel contended, "I think it's very possible they didn't do it correctly."[30] The undersigned disagrees.

Having found the purpose of the '379 Patent to be the dissemination of regionally broadcast content to users outside the region and that such purpose is a well-known, longstanding, commercial business practice, the Court finds as a matter of law that the claims of the '379 Patent are directed to an abstract idea. Because the Court finds that Plaintiff's claims are drawn to an abstract idea, the Court will move to the second step of the analysis: determining whether the claim includes an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S.Ct. at 2355 (internal brackets omitted).

### C. *Mayo/Alice* step 2: Do the claims contain an "inventive concept"?

#### 1. Analysis of representative claim 1

The United States Supreme Court has held that if an abstract idea is found, then at step two of the analysis the Court is to:

---

**29.** *See, e.g., buySAFE*, 765 F.3d at 1354–55; *Ultramercial III*, 772 F.3d at 722–23 (Mayer, J. concurring); *Content Extraction*, 776 F.3d at 1347.

**30.** *See Tr.* at 136.

examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application. A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' *Mayo* made clear that transformation into a patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'"

*Id.* at 2357 (citations omitted). Further, the Court is to consider claim elements both individually and as an ordered combination. *Id.* at 2355. The "additional features" must be more than "well-understood, routine, conventional activity." *Ultramercial III,* 772 F.3d at 715 (citing *Mayo,* 132 S.Ct. at 1298) (internal quotations omitted). *Alice* also held that the "[m]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." 134 S.Ct. at 2358. The Supreme Court held that stating an abstract idea "while adding the words 'apply it with a computer'" amounts to a "mere instruction to 'implemen[t]' an abstract idea 'on a computer'" and "cannot impart patent eligibility." *Id.* (quoting *Mayo,* 132 S.Ct. at 1301).

■ In its brief, Affinity urges the application of the "machine or transformation" test as a "useful clue" in the second step of the *Alice* analysis. Pl.'s Resp. at 18. Under the "machine or transformation" test, a claimed process can be patent eligible if 1) it is tied to a particular machine or apparatus; or 2) if it transforms a particular article into a different state or thing. *See Bilski,* 561 U.S. at 593, 130 S.Ct. 3218. During the hearing, Affinity informed the Court that prong one of the "machine or transformation" test is the only relevant prong for analysis because Affinity does not claim that the '379 Patent transforms broadcast content into something else.[31] Accordingly, the Court will only apply prong one.

The Court notes that a general purpose computer, coupled with the internet, has been found to be a "ubiquitous, information-transmitting medium, not a novel machine," thus failing the machine test. *Ultramercial III,* 772 F.3d at 716–17. Affinity counters that the '379 Patent provides more than a general purpose computer because the claims reference a "specific combination of hardware and software components[,]" including "an application for 'storage and execution' available for over the air download to a cellular phone" and that none of the claim steps can be performed by a human alone. Pl.'s Resp. at 19. Affinity further contends that Claim 1 recites specialized components such as a "network based resource," "non-transitory storage medium," and the downloadable software application providing a "graphical user interface," with requesting and receiving capabilities which "are essential to the inventors' specific solution to distributing regional broadcast content." *Id.*

In reviewing representative Claim 1, the Court finds it fails the "machine or transformation" test. Specifically, in analyzing Claim 1, Affinity merely takes the abstract idea identified above and applies it to a generic, electronic device—in this case, a wireless cellular telephone device operating as a "ubiquitous, information-transmitting medium, not a novel machine." *Ultramercial III,* 772 F.3d at 716–717. Although Affinity alleges the components in Claim 1 are specialized, the Court finds the claim merely sets forth

31. *See id.* at 148–49.

routine and generic processing and storing capabilities of computers generally. The claim describes a generic network with a "non-transitory storage medium"—which could be any kind of memory. The claim only further describes that the network sends and receives [regional broadcast] data in a streaming form. *See, e.g., Content Extraction,* 776 F.3d at 1348; *Tri-Play,* 2015 WL 1927696, at *14–16; *In re TLI Commc'ns LLC Patent Litig.,* No. 1:14md2534, 87 F.Supp.3d 773, 790–91, 2015 WL 627858, at *13 (E.D.Va. Feb. 6, 2015).

In finding Affinity's '379 patent fails the "machine or transformation" test, *In re TLI Communications* is analogous and persuasive. In *TLI Communications,* the Eastern District of Virginia, on motions to dismiss based on § 101, examined a patent which the Court found was clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs. *Id.* at 788–89, at *11. Plaintiff contended that the "inventive concept" within the relevant claim was an "intelligent" server which performs a variety of inventive functions: (1) it receives data—digital images and classification information—entered or inputted by the user; (2) it extracts from the received data the classification information which characterizes the digital images; and (3) it stores the digital images by taking the classification information into consideration. *Id.* at 791–92, at *14. In applying the "machine or transformation" test to the "intelligent" server, the Court held:

> [P]laintiff's argument fails to persuade, because, as noted, *the so-called "intelligent server" is simply a generic computer in disguise because the three functions the server performs—receiving the data, extracting classification information, and then storing digital images by considering the classification informa-*

*tion—can all be performed by a generic computer.* Indeed, plaintiff's argument, if accepted, would contradict the express holding in *Alice* that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [t]he idea' to a particular technological environment." *It necessarily follows that tethering an abstract idea to a generic computer, as here, is insufficient to pass the machine-or-transformation test.*

*Id.* at 793–94, at *16 (emphasis supplied) (internal citations omitted). Similarly, the functions performed by claim 1 of the '379 Patent—storage of memory, software to execute the program, sending and receiving data—can all be performed by a generic computer. There is not a non-generic function or component contained in the claims that sets forth the blueprint with any degree of specificity of how to disseminate regional broadcast content to a user outside the region over a wireless, cellular telephone device. Although the Court need not look to the specification to resolve the issue, a review of the '379 Patent's specification confirms this. In column 10, line 6, the specification provides that "[t]he present invention is not limited to any one specific type of software and may be realized in plurality of ways as can be appreciated by those skilled in the art." Claim 1 does not pass the "machine or transformation" test because the only recited machine in the claim is a wireless, cellular telephone device operating as a generic computer, which does not serve as a meaningful limitation.

Affinity's position is that the inventive concept in the claims, "the number one element to look for," [32] is the "downloadable application" that can present a "graphical user interface" for selecting what is being maintained on the network resource.

---

**32.** *See id.* at 105–106.

At the hearing, the Court directed Affinity to recent Federal Circuit and district court case law holding that, to determine whether something is an inventive concept, a court must look to see if the patent adds something to the abstract idea that is an "integral" or "significant part" of the invention. *Bancorp*, 687 F.3d at 1278; *TLI Commc'ns*, 87 F.Supp.3d at 786 n. 34, 2015 WL 627858, at *9 n. 34. In other words, and as stated by the Supreme Court in *Mayo*, "[w]hat else is there in the claims before us?" *Mayo*, 132 S.Ct. at 1297. In the instant case, the answer is nothing sufficient to transform the patent into a patent-eligible invention.

In *Alice*, the Supreme Court set out a "technological arts"[33] test, finding that the asserted method and system claims: 1) do not "purport to improve the functioning of the computer itself," 2) "nor do they effect an improvement in any other technology or technical field." *Alice*, 134 S.Ct. at 2359. In order to satisfy the technological arts test, claims must "not only [1]] describe a technological objective, but [2]] set out a precise set of instructions for achieving it." *Ultramercial III*, 772 F.3d at 721–22 (Mayer, J., concurring). In determining whether a claim presents an inventive concept, the Federal Circuit and post-*Alice* district courts have examined whether the inventive concept has a "specific functionality" or explains the "how" as to the manner in which the inventive concept performs. *See id.; see also Tri-Play*, 2015 WL 1927696, at *15; *TLI Commc'ns*, 87 F.Supp.3d at 796–97, 2015 WL 627858, at *19. In *TLI Communications*, the Eastern District of Virginia, in examining whether the claimed limitation was an incentive concept, found the Federal Circuit's decision in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed.Cir.2012) instructive, wherein the circuit court noted:

Although the district court construed 'computer aided' as a limitation, the '427 patent does not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent... The claims are silent as to *how* a computer aids the method, the *extent* to which a computer aids the method, or the *significance* of a computer to the performance of the method. The undefined phrase 'computer aided' is no less abstract than the idea of a clearinghouse itself.

*Id.* at 1333. (citing *Dealertrack*, 674 F.3d at 1333). In the instant base, the claim limitations of Affinity's '379 patent, specifically the downloadable application with graphical user interface, do not identify any specific functionality or explain "how" they are going to download regionally broadcast content onto a wireless cellular telephone device such that a user outside the region can view the content. On its face, Claim 1 merely states that the application "enables" the device to present a graphical user interface so a user can select what data that user wants to stream. Both the claim and the specification are devoid of any teaching or blueprint explaining how the device can do what it purports to do. The claim is silent as to how the downloadable application with graphical user interface aids the system or method, the extent to which it aids the system or method, nor does it explain the significance of the downloadable application with graphical user interface to performance of the system or method. The bottom line is that Claim 1 takes the abstract idea and says "apply it" to a wireless, cellular telephone device acting as a generic computer. As such, the downloadable application with graphical user interface does not add something to the abstract idea that is an

**33.** *See Ultramercial III,* 772 F.3d at 721 (Mayer, J., concurring).

"integral" or "significant part" of the invention.

Even if the Court were to further break down the limitation and consider only the "graphical user interface" standing alone, the graphical user interface itself does not amount to an inventive concept. By way of function, the claim states that the graphical user interface comprises a "partial listing of available media sources on a display ... wherein the listing includes a selectable item that enables user selection of the regional broadcasting channel." '379 Patent col. 18 l. 31–35. Similarly, this is a generic computer component that does not contain an inventive concept. *See Cloud Satchel v. Amazon.com, Inc.,* No. 13-941-SLR, 76 F.Supp.3d 553, 2014 WL 7227942 (D.Del. Dec. 18, 2014). In *Cloud Satchel,* the limitations present in the dependent claims included a "display unit and a graphical user interface." *Id.* at 563 n. 9, at *7, n. 9. The defendants contended that such limitations merely recited "generic computer components" or "token postsolution components." *Id.* In finding the patent invalid, the District of Delaware concluded that "the claimed computers and hardware elements of the claimed subsystem are generic." *Id.* Likewise, this Court finds that the "graphical user interface" is a generic computer component.

As a final point on "graphical user interfaces," the Court finds the *Trading Techs.* decision relied upon by Affinity is not applicable. In *Trading Techs.,* the Northern District of Illinois determined that graphical user interfaces designed to display a "static price axis" for commodities trading "recite[d] an invention that is not merely the routine or conventional use of computers or the Internet," but rather "eliminated some problems of prior GUIs relating to speed, accuracy and usability." 2015 WL 774655, at *5. First, the undersigned notes that the Northern District of Illinois initially stated that "the recitation of a

GUI in the claims of the patents in suit does not automatically impart patent eligibility." *Id.* Rather, the district court found that the "claims are directed to a *technological improvement* of GUIs." *Id.* (emphasis supplied). As such, *Trading Techs.* is distinguishable because unlike in the instant case, the claims of the patent in the case examined by the Northern District of Illinois explained the "how" and "specific functionality" of the graphical user interface resulting in a technological improvement. As explained above, the claims of the '379 Patent present the graphical user interface as merely a generic computer component.

Therefore, the Court finds as a matter of law that Claim 1, the representative claim of the '379 Patent, does not contain an inventive concept in that it does not add something to the abstract idea that is an "integral" or "significant part" of the invention. Since the parties stipulated that system claim 1 is representative of method claim 14, claim 14 is likewise abstract and contains no inventive concept. The Court will now review the dependent claims to determine whether they add anything of substance to Claim 1 sufficient to confer patentability.

### 2. Analysis of dependent claims

■ The dependent claims of the '379 Patent consist of claims 2–13 of the system claims and 15–21 of the method claims. Defendants allege the dependent claims of the '379 Patent add only trivial limitations insufficient to confer patentability. The Court agrees.

The other asserted claims add little to the substance of claims 1 and 14. The dependent method claims assert routine, well known, and conventional concepts, all existent as of the year 2000. Claims 15 and 16 provide that the streaming media is audio accompanied by information about

the content including "at least one of a song title, a song artist, a song decade, and a song genre"—exactly the function of a jukebox. '379 Patent col. 20 l. 9–16. Claim 17 is nothing but transmission of the abstract idea itself. Claim 18 merely defines the regionally broadcasted content as video which is the content television stations have always broadcast. Claim 19 involves the transmission of a "software update" to the electronic devices that modifies the application; however, the claim fails to state how the update modifies the application. Claim 20 transmits advertisements to the electronic device, and Claim 21 transmits targeted advertisements which are ideas that have been around as long as advertising itself. Each of the above claim limitations is insignificant and conventional.

Likewise, the dependent system claims present limitations which were well known, routine and generic computer-based concepts as of the year 2000 and do nothing either individually, or as an ordered combination, to confer patentability on the '379 Patent. Claims 2, 4, 5, 9, and 10 each recite instructions for either receiving or displaying content or content sources. None of these claims are inventive as claim 2 (presenting information about a song in a "graphical representation"), claims 4 and 5 (both displays of content), and claim 10 (instructions to present media sources within a graphical user interface without use of a web browser) were each discussed in detail above and rejected as an inventive concept in the Court's analysis of a "graphical user display." Claim 9 is nothing but a virtual representation of a radio dial which has been a longstanding feature of radios for years. Claim 6 recites a search engine which was a well known generic computer feature as of the year 2000. Claim 7 describes a private login for the user, and Claim 8, which incorporates the system of claim 7, allows a user to select a playlist, both of which are basic

computer functions within the prior art that add nothing of practical significance. Claim 3 recites receiving an FM signal in the wireless cellular telephone device over the internet, but it is devoid of specific functionality and is representative of the type of claims that *Alice* and *Ultramercial III* describe as unpatentable. Finally, claim 11 sets forth buffering of the streaming media signal, claim 12 describes the streaming media signal as video, and claim 13 recites that the electronic device has a network address. Again, neither claims 11, 12 nor 13 describe anything inventive and not in the prior art.

In sum, the dependent system and method claims, considered with Claims 1 and 14, either individually or as an ordered combination, all describe conventional, well known and routine concepts, accomplished using computer hardware and software recited in "purely functional and generic" terms and are, therefore, invalid under 35 U.S.C. § 101. *See Alice*, 134 S.Ct. at 2360. Accordingly, the Court finds as a matter of law that the dependent claims do not add something to the abstract idea that is an "integral" or "significant part" of the invention.

### D. Preemption inquiry

United States Supreme Court jurisprudence makes clear that the rationale for excluding laws of nature, natural phenomena, and abstract ideas from patentability is the concern of preemption. *See Alice*, 134 S.Ct. at 2354. " '[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Id.* (quoting *Mayo*, 132 S.Ct. at 1293). In analyzing whether a patent is preemptive, the Supreme Court has stated that the relevant question is "how much future innovation is foreclosed relative to the con-

tribution of the inventor." *Mayo*, 132 S.Ct. at 1303. The concern recognized by the Supreme Court is that "patent law not inhibit further discovery by improperly tying up the future use of" "the basic tools of scientific and technological work" which the Court has found to be the basic "building blocks of human ingenuity." *Alice*, 134 S.Ct. at 2354. Although much of the pre-emption analysis is subsumed in the two-step *Mayo/Alice* analysis, it will also be addressed separately by the Court. *See Open Text S.A. v. Box, Inc.*, 78 F.Supp.3d 1043, 1048, 2015 WL 269036, at *4 (N.D.Cal.2015) ("the "preemption concern . . ." is [ ] baked into the Mayo/Alice test").

▬▬ Affinity argues the claimed inventions of the '379 Patent do not risk pre-emption of the dissemination of regionally broadcasted content to users outside the region because the patent's claims do not cover satellite radio or television, cable television, media streamed over a traditional, home computer or even by FM signal to a cellular phone. On the other hand, Defendants contend that the '379 Patent is preemptive because it prohibits the use of regionally broadcast content to a user outside the region on arguably any electronic device that involves cellular communication.[34] Defendants further argue that the '379 Patent specification gives rise to "at least ten patents"[35] in that "electronic device" is defined in the specification as "includ[ing] a network radio, a modular device, an audio system, a personal digital assistant (PDA), a cellular phone, or other electronic devices operable to receive information wirelessly communicated by communication engine." Col. 4 l. 27–32.

▬▬ In determining "how much future innovation is foreclosed relative to the contribution of the inventor," a claim need not tie up the entire field to be preemptive, rather the concern is whether the claim

"tie[s] up too much future use" of the abstract idea. *See Mayo*, 132 S.Ct. at 1302. In other words, the "pre-emption inquiry focuses on whether the patent 'would risk disproportionately tying up the use of the underlying ideas.'" *Cloud Satchel*, 76 F.Supp.3d at 564, 2014 WL 7227942 at *9 (citing *Alice*, 134 S.Ct. at 2354; *Mayo*, 132 S.Ct. at 1294).

On the issue of preemption, analysis of steps one and two under the *Mayo/Alice* test leads the Court to side with Defendants. Allowing the asserted claims to survive would curb any innovation related to the implementation of the abstract idea on potentially any electronic device that utilizes cellular communication. The asserted claims of the '379 Patent preempt the dissemination of regionally broadcasted content to a user outside the region on an electronic device that utilizes cellular communication, thereby monopolizing the idea on a ubiquitous device as is evidenced by the scope of the definition in the specification. In this case, it is clear neither the system nor method claims, either considered individually or as an ordered combination, impose any significant limitation on the abstract idea and, therefore, disproportionately tie up the future use of that idea.

### E. *DDR Holdings* is distinguishable

In *DDR Holdings*, the Federal Circuit found that patents directed to systems and methods of generating a composite web page that combines certain visual elements of a "host" website with content of a third-party merchant were not invalid. 773 F.3d at 1259. The claimed invention sought to overcome a problem specifically arising in the realm of computer networks—the challenge of "retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol,

---

**34.** *See* Tr. at 155–56.

**35.** *See id.* at 152.

would be instantly transported away from the host's website." *Id.* at 1257. The Court explained that a claimed solution "that is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of" a specific technology is eligible as opposed to those that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.*

In its brief, Affinity suggests that the *DDR Holdings* opinion is "particularly relevant." The Court, however, finds that it is easily distinguishable. First, unlike the instant case, the Federal Circuit concluded that the patent at issue was probably not directed to an abstract idea because "these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Second, and in contrast to the instant case, the Federal Circuit found that "[u]nlike the claims in *Ultramercial,* the claims at issue here *specify* how interactions with the Internet are manipulated to yield a desired result." *Id.* (emphasis supplied). Specifically, the Court found that the claims recite an inventive concept for resolving a particular "Internet-centric problem." *Id.* at 1258–59. Further, in making this finding, the Federal Circuit cautioned "that not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* at 1258. At the hearing, the Court asked Affinity's counsel if there is any "internet centric problem with being able to transmit regional broadcast content over streaming media to MLB.com on my home computer in order for me to watch that ball game," and Affinity agreed that there was not.[36] Instead, the '379 Patent merely takes the abstract idea of the dissemination of regionally broadcasted con-

tent to a user outside the region and says "apply it" to a wireless, cellular telephone device acting as a generic computer. *See Ultramercial III,* 772 F.3d at 715–17.

## IV. Conclusion and Recommendations

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) (ECF No. 19) be **GRANTED** and that this matter be **DISMISSED.**

The undersigned further recommends that Defendants' pending Motions to transfer Venue to the Western District of Texas, Austin division be **DENIED AS MOOT.**

The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc). To the extent that a party has not been electronically served by the Clerk with this Report and Recom-

**36.** *See id.* at 143–145.

mendation pursuant to the CM/ECF procedures of this district, the Clerk is directed to send such party a copy of this Report and Recommendation by a national overnight delivery service having confirmation of pickup and delivery.

**Signed** this 2nd day of June, 2015.